**M. R. PEARSON, Plaintiff in Error,**
v.
**J. E. MULLINS, Defendant in Error.**
No. 39276.

Supreme Court of Oklahoma.
March 6, 1962.

As Corrected March 27, 1962.

Hardin Ballard, Purcell, for plaintiff in error.

George Bingaman, Thomas G. Smith, Purcell, for defendant in error.

IRWIN, Justice.

M. R. Pearson, plaintiff in error, commenced this action against Hardin M. Lovelace and Betty Jean Lovelace, husband and wife, and J. E. Mullins to cancel a real estate mortgage on certain property in Purcell, Oklahoma, and to quiet his title thereto. The Lovelaces did not appear and were declared to be in default. Defendant Mullins filed an answer in the form of a general denial and a cross-petition in which he alleged the execution and delivery of a note in the sum of $2725.00, secured by a mortgage on the property involved, both instruments being executed by the Lovelaces, and prayed for foreclosure of his mortgage.

The trial court found in favor of defendant Mullins on his cross-petition and ordered and adjudged that he had a first and valid lien on the property in the sum of $2275.00, with interest thereon, attorney fees and cost and ordered that the property be sold if said judgment were not paid. The trial court further ordered and adjudged that title to the property be quieted in Pearson, subject to the mortgage indebtedness.

Pearson appeals from that portion of the judgment which decreed the property was subject to the mortgage of Mullins. Pearson will be hereinafter referred to as plaintiff and Mullins will be referred to as defendant.

## PLEADINGS

Plaintiff alleged ownership of the property and that defendant Mullins was claiming an interest therein by reason of a note and mortgage executed by Hardin M. Lovelace and his wife, Betty Jean Lovelace; that the Lovelaces have never had any right, title or interest in the property and the mortgage in favor of defendant casts a cloud upon his title. He prayed that the mortgage be cancelled.

Defendant alleged the execution and delivery of the note and mortgage; that at the time of the execution and delivery thereof, the Lovelaces were the owners thereof and were in the quiet and peaceful possession of that property; that plaintiff had actual and constructive notice of the mortgage and the possession and title of the Lovelaces; that the mortgage was superior to the title of the plaintiff.

## EVIDENCE

Joe P. Ballard was record owner of the property in 1956. In December, 1956 Hardin Lovelace secured a building permit to construct a dwelling on the premises in which permit Lovelace was designated as the owner and building contractor. On August 6th and again on August 22, 1956, defendant made loans to Hardin Lovelace which is shown by two checks in the sum of $1,000.00 each, payable to Hardin Lovelace. On December 4, 1957, the Lovelaces executed and delivered to defendant their promissory note in the sum of $2725.00 secured by a mortgage covering the premises, said mortgage was filed for record January 8, 1958. On December 4, 1958, a warranty deed dated and acknowledged on December 4, 1958, and executed by J. P. Ballard and Madeline D. Ballard, in which plaintiff was named as grantee was filed for record.

Plaintiff testified he purchased the premises from Ballard sometime in December 1956; that the deed thereto was executed by Ballard and his wife on date of purchase and he gave Ballard credit on his account with the Pearson Lumber Company for $450.00. This credit is shown on the

books of the lumber company. The testimony developed that the name of the grantee, the date of the deed and the date of acknowledgement were left blank. These blanks were filled in at a later date. Plaintiff further testified he took possession of the premises immediately upon securing the deed and in 1957 he employed Hardin Lovelace to construct a dwelling thereon; that he furnished the material used in the construction and furnished men to assist Lovelace in the construction; that Lovelace did not fully complete the construction and that he (plaintiff) had a contracting firm to complete the job; that Lovelace was never in possession of the premises and never did live thereon. It is noted plaintiff did not produce any evidence of hiring any men to assist Lovelace, nor any evidence of payment for labor, nor did he produce any evidence of any material being furnished by him or the lumber company to be used in the construction of the house.

Defendant testified that he is well acquainted with the premises; that Lovelace was in possession thereof and started building a home thereon; that Lovelace borrowed $2000.00 from him to be used in purchasing material to go into the construction and agreed to refinance the loan when the house was completed and repay him the amount loaned together with interest; that he went by the property many times and that Lovelace and his father were the only people working thereon; that when the outside of the house was completed and most of the inside finished in October, 1957, Lovelace and his family moved in and resided there approximately 10 days. Another witness who resided in the neighborhood stated that Lovelace and his family lived in the house two or three months. Defendant also testified that approximately forty per cent of the material used in the construction of the house was second hand or used material, and the same was furnished by Lovelace.

Defendant further testified that on December 4, 1957, he met Lovelace at the office of J. P. Ballard and Ballard prepared a note; that he stated Lovelace owed him $2000.00 and interest and that Lovelace said that he still owed Ballard $450.00 for the property and suggested such sum be added in and could be paid to Ballard when the note was paid; that Ballard did not object but complied by adding in the $450.00; that Ballard after preparing the note was instructed to prepare a mortgage covering the premises as security; that the mortgage included the $450.00 and both instruments were executed by Lovelace and his wife and the acknowledgement taken by Ballard and the mortgage was recorded on January 8, 1958.

Ballard testified that he told defendant and Lovelace when instructed to prepare the mortgage that it would be worthless; that he had sold the property to plaintiff and plaintiff was then the owner thereof; that Lovelace stated to him to go ahead; that he had purchased the property from plaintiff; that he had no recollection of notifying plaintiff of the execution of the mortgage.

A statement was introduced in evidence, signed by Lovelace, which had been prepared by Ballard, on the date the mortgage was executed in which it was recited Lovelace was building a house on the premises; that he expected to complete it by March, 1958; that he would refinance the loan and pay the mortgage in full.

Defendant specifically denied that Ballard stated the mortgage would be worthless; that he had sold the property to plaintiff and that plaintiff was the owner thereof and specifically denied that Lovelace stated to go ahead and prepare the mortgage as he had purchased the property from plaintiff.

## CONCLUSIONS

Plaintiff contends that defendant's testimony concerning the conversation with Ballard, the record owner, in the absence of plaintiff, and in which Ballard allegedly admitted that he had sold the property to Lovelace, was inadmissible against plaintiff because plaintiff had previously purchased the property from Ballard and was the ac-

tual owner of the property when the conversation took place.

To sustain this contention, plaintiff urges that title must have been in Ballard at the time the alleged declarations were made to be admissible and cites 31 C.J.S. Evidence § 323, which states:

"In order to render an admission of a former owner of property competent against his successor in title, it must have been made at a time when the title was in declarant. An admission of a former owner may not be received against his successor in title if it was made either before declarant acquired title or after it had passed from him, unless the successor has concurred or acquiesced therein."

And Woods v. Faurot, 14 Okl. 171, 77 P. 346, where we held:

"After a party has parted with the title and possession of personal property, his declarations made subsequently respecting the ownership or title to the property, as a general rule, cannot be introduced in evidence by a third party to defeat the title of his vendee."

Since Ballard was the alleged declarant, we must first determine his interest, if any, at the time the alleged declarations were made. Plaintiff urges that Ballard divested himself of all right, title and interest in the property by virtue of a deed from Ballard to plaintiff in December, 1956. However, plaintiff and Ballard both testified that the name of the grantee, as well as the date of execution and acknowledgement of this deed were not filled in. Plaintiff further testified that he did not know who typed in his name as grantee or when his name was filled in as grantee; that he did not write in the date of the deed nor the date of acknowledgement, but thought perhaps whoever recorded the deed on December 4, 1958, also filled in the dates before recording it.

We cannot presume or conclude that the name of plaintiff was inserted in the deed from Ballard to plaintiff prior to the date shown on the deed as the evidence conclu-sively discloses that the grantee's name was not filled in the deed when the same was drawn. Since the evidence discloses that the dates were not filled in until the deed was recorded, and the record is barren of any evidence whatsoever tending to show that the name of the grantee was filled in prior to this time, we can only conclude that the name of the grantee was inserted the day the deed was dated and acknowledged, which was December 4, 1958.

What is the effect of an instrument purporting to be a deed where the name of the grantee is not filled in?

In the case of Strange v. Maloney, 178 Okl. 65, 61 P.2d 725, we held:

"An instrument, purporting to be a deed in which a blank has been left for the name of the grantee, is inoperative as a conveyance."

In the case of Burnham v. Eschler, 116 Utah 61, 208 P.2d 96, that court held:

"A paper purporting to be a deed but which is blank as to the grantee is no deed and is ineffective as a conveyance while the blank remains."

In Vosburg v. Carter, 34 N.M. 194, 279 P. 563, that court held:

"An instrument purporting to be a deed, and in which a blank has been left for the name of the grantee, is no deed, and is inoperative as a conveyance so long as the blank remains unfilled."

In Harth v. Pollock, 97 Or. 663, 193 P. 202, that court held:

"A deed executed, but with the name of the grantee left blank, conveys no title while in that condition."

175 A.L.R. 1295 states the general rule is to the effect "that an instrument purporting to be a deed, and in which a blank has been left for the name of the grantee, is no deed, and is inoperative as a conveyance so long as the blank remains unfilled."

Under the above authorities, the deed from Ballard to plaintiff was ineffective and conveyed no legal title until plain-

tiff's name was filled in as grantee on December 4, 1958. Therefore, Ballard was not only the record owner but also had legal title to the property prior to the time the name of plaintiff, as grantee, was filled in the deed on December 4, 1958, and during the time Ballard allegedly made the purported declarations.

The rule with reference to the admissibility of declarations of the owner of property in disparagement of his title, as against persons claiming under him is found in 31 C.J.S. Evidence § 324, page 1102, under the heading of evidence. Therein it is stated:

"A statement, declaration, or admission against interest, made by a former owner of real estate on his own knowledge, and during his ownership or possession, or while in both ownership and possession, is competent against one who claims under him an interest acquired since the declaration was made. * * *"

See also 31 C.J.S. Evidence § 325, pg. 1103 and 20 Am.Jur. Sec. 604, pg. 516.

■ In the case of Pavlovitch v. Wommack, 206 Okl. 158, 241 P.2d 1119, we held:

"Privity between the declarant and a party to the record may render an admission competent, and where owner of property makes admissions in disparagement of his title, these may be shown against persons claiming under or through him. Such an admission, being primary evidence, is competent."

See also Hopper, Executor v. Rowntree, (Okl.) 275 P.2d 285.

We therefore conclude that the purported declarations of Ballard, allegedly made while he was the record owner and holder of the legal title to the premises were admissible.

Plaintiff next contends that even though we find that plaintiff did not actually buy the property from Ballard until after Lovelace had executed the mortgage to defendant, this testimony was nevertheless inadmissible against plaintiff because he was a bona fide purchaser for a valuable consideration without either actual or constructive notice of defendant's mortgage.

In this connection plaintiff urges that the recorded mortgage from Lovelace to defendant would not constitute notice to him as Lovelace was a complete stranger to the record title.

■ We have heretofore determined that the deed from Ballard to plaintiff was not an effective conveyance until the name of the plaintiff was filled in on December 4, 1958. On December 4, 1958, when the deed became effective, defendant's mortgage from Lovelace had been on record for approximately eleven months as it was recorded January 8, 1958. Although the evidence may have been in conflict as to possession of the property, who constructed the dwelling thereon and who furnished the materials for the construction; the evidence conclusively shows that Lovelace obtained a building permit designating him as the owner and there was sufficient competent evidence to sustain a finding that Lovelace was in possession of the property, furnished the materials and constructed the dwelling thereon. Ballard, the record owner of the property, must have recognized that Lovelace had an interest, as the record discloses that at the suggestion of Lovelace, Ballard allegedly included in the mortgage the additional sum of $450.00 which Lovelace allegedly had said was still due Ballard on the purchase price.

Although Lovelace, the mortgagor, may not have had legal title to the property, there is sufficient evidence to sustain a finding that he had an equitable interest. In 59 C.J.S. Mortgages § 75c it is stated that the holder of an equitable title to, or interest in real property may, to the extent of his interest give a valid mortgage. Inasmuch as Lovelace had an equitable interest, he could give a valid mortgage and since the same was of record when plaintiff obtained his title, plaintiff cannot now complain that he did not have notice of such mortgage.

The plaintiff further contends the judgment establishing the sum due defendant from Lovelace as a first mortgage lien on plaintiff's property is not sustained by the evidence and contrary to law. The amount of the note and mortgage was $2750.00, with interest thereon. Included in the $2750.00 was the sum of $450.00, which was the purchase price allegedly owing Ballard by Lovelace. Defendant did not claim this $450.00 nor did the judgment include the $450.00. The evidence does show that defendant loaned Lovelace $2000.00 in August, 1956, and the note and mortgage were executed in December 1957. Plaintiff does not point out in what way the note and mortgage were in excess of the original loan with interest thereon.

Although the evidence may have been in conflict as to the amount due, this is an action of equitable cognizance and we are not bound by the findings of the trial court but may review and weigh all the evidence and where the judgment of the trial court is not clearly against the weight of the evidence, the same will be sustained. Jones v. Moore, (Okl.), 338 P.2d 872.

We have carefully reviewed the record and we cannot say the judgment of the trial court is clearly against the weight of the evidence.

Judgment affirmed.

WILLIAMS, C. J., BLACKBIRD, V. C. J., and DAVISON, HALLEY, JACKSON and BERRY, JJ., concur.